IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CRAIG L. BROOKS,

    Plaintiff,

      v.

FULTON-DEKALB HOSPITAL
AUTHORITY, ROBERT ROHR,
and HARRY MCBRIDE,

    Defendants.

CIVIL ACTION FILE

NO. 1:02-CV-714-GGB

## OPINION AND ORDER

## REGARDING MOTION FOR JUDGMENT AS A MATTER OF LAW

This employment discrimination action is before the court on defendants' Motion for Judgment as a Matter of Law, for a New Trial, and to Stay Execution of Judgment [Doc. 164]. For reasons stated below, defendants' motion is **GRANTED in part and DENIED in part**.

This case was tried before a jury in July 2005.[1] Four issues were presented to the jury: (1) Whether plaintiff was suspended in March 2001 because of his race (against defendants Fulton-DeKalb Hospital Authority and Harry McBride); (2) whether

---

[1] The parties consented to jurisdiction before a magistrate judge on November 29, 2004. (See Docs. 108, 109).

plaintiff's employment was terminated in June 2001 because of his race and/or in retaliation for his participation in proceedings before the Equal Employment Opportunity Commission ("EEOC") (against defendants Fulton-DeKalb Hospital Authority and Robert Rohr); (3) whether plaintiff was denied the position of substance abuse counselor in December 2001, upon being reinstated, in retaliation for his participation in EEOC proceedings (against the Fulton-DeKalb Hospital Authority); and (4) whether the Fulton-DeKalb Hospital Authority could establish an affirmative defense to plaintiff's claim under the Fair Labor Standards Act.

The jury found in plaintiff's favor with respect to all claims with the exception of plaintiff's claim regarding the March 2001 suspension against the Fulton-DeKalb Hospital Authority.  The Jury awarded plaintiff $26,041 in back pay, a total of $80,000 in other compensatory damages, and a total of $105,000 in punitive damages ($30,000 against defendant McBride and $75,000 against defendant Rohr).  At the conclusion of the trial, the court also awarded plaintiff liquidated damages for his FLSA claim. (Doc. 149).  Defendants now seek judgment as a matter of law, or in the alternative a new trial, with respect to all claims except plaintiff's claim under the FLSA.

I.      STANDARD OF REVIEW

Judgment as a matter of law may be granted after "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . . ."  Fed.R.Civ.P. 50(a).

> The court should review all of the evidence in the record, draw all reasonable inferences in favor of the non-moving party, and disregard all evidence favorable to the moving party that the jury is not required to believe.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  Credence should also be given to "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."  Id. (internal quotations omitted).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Id. at 150, 120 S.Ct. 2097.

Akouri v. State of Florida Dept. of Transp., 408 F.3d 1338, 1343 (11th Cir. 2005).

> Although the existence of a genuine issue of material fact precludes judgment as a matter of law, a jury question does not exist because of the presence of a mere scintilla of evidence.  A motion for judgment as a matter of law will be denied only if reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.  These standards require us to consider whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted.

Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999)(quotation marks and citations omitted).

Similarly, a new trial may be granted if the verdict rendered by the jury is contrary to the *great* weight of the evidence, not merely the *greater* weight of the evidence. Watts v. Great Atlantic and Pacific Tea Co., Inc., 842 F.2d 307, 310 (11th Cir. 1988); Rosenfield v. Wellington Leisure Products, Inc., 827 F.2d 1493, 1497-98 (11th Cir. 1987). In making this determination, the court must consider all of the evidence, including evidence favoring the moving party. Rosenfield, 827 F.2d at 1498. Although the decision whether to grant a new trial is within the court's discretion, a party's constitutional right to a trial by jury requires this court to consider the evidence carefully before granting a new trial based solely on insufficiency of the evidence. See Evers v. Equifax, Inc., 650 F.2d 793, 796-97 (5th Cir. Jul. 1981)(finding that "somewhat broader review" of a district court order granting a new trial is required when the order is based on the weight of the evidence "to protect a litigant's Seventh Amendment rights and to prevent improper intrusion on the jury's function"); Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984)("When a new trial is granted on the basis that the verdict is against the weight of the evidence our review is particularly stringent to protect the litigant's right to a jury trial."); Redd v. City of Phoenix City,

Ala., 934 F.2d 1211, 1215 (11th Cir. 1991)(requiring "extremely stringent" review).  This court may not substitute its "own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury."  Rosenfield v. Wellington Leisure Products, Inc., 827 F.2d 1493, 1498 (11th Cir. 1987).  When some support for a jury's verdict is present, a new trial should not be granted.  Redd, 934 F.2d at 1215; Hardin v. Hayes, 52 F.3d 934, 940 (11th Cir. 1995).

Defendants base their request for a new trial solely on lack of evidence.  Given the deference to the jury required when this type of argument is made, the court finds that, as applied to the facts of this case, the standards for judgment as a matter of law and for a new trial are essentially the same.  Thus, the reasoning provided below is applicable to both requests.

I.     MARCH 2001 SUSPENSION: McBRIDE

A.     Qualified Immunity

Defendants argue that McBride is entitled to qualified immunity with respect to plaintiff's March 2001 race discrimination claim "because the undisputed evidence shows that [McBride] would have made the same decision [regarding plaintiff] in the absence of any discriminatory motive."  (Doc. 164-2, Def. Brf. at 4).  The jury found

to the contrary, and the court finds that its decision is supported by the evidence. Plaintiff testified that McBride repeatedly made comments about wanting an "all black" staff.  The jury was entitled to find plaintiff credible on this point and to rely on this evidence to conclude that McBride was motivated primarily by plaintiff's race and would *not* have made the same decision regarding plaintiff in the absence of this factor. In light of this evidence, plaintiff was not required, as defendants suggest, to present evidence disputing the accuracy of McBride's claim that plaintiff failed to follow his instructions or that he failed to take patients to the doctor when requested.  Pretext may be proven "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Furthermore, plaintiff did produce some evidence disputing McBride's claims. He testified that, in general, he took patients to the doctor when needed, and he explained the procedures for doing so.  (See Doc. 185, Attach. 7, July 18 Transcript at 4-6).  Plaintiff also presented evidence that other Substance Abuse Counselors, all of whom were black, failed to correct errors in their patient records, but were not suspended.

When the evidence as a whole is considered, the court finds that it was sufficient to support the jury's finding that McBride would not have made the same decision regarding plaintiff in the absence of plaintiff's race.  Defendants err in focusing their argument solely on evidence regarding plaintiff's failure to take patients to the doctor.  Plaintiff is not required to rebut every piece of evidence offered by defendants on the issue of McBride's intent, especially given evidence of discriminatory statements made by McBride.

To the extent defendants intend to argue that McBride is entitled to qualified immunity even if he would *not* have made the same decision regarding plaintiff, as long as he was motivated *in part* by a legitimate factor, (see Doc. 185-1, Reply Brf. at 9, citing Stanley v. City of Dalton, 219 F.3d 1280, 1295 (11th Cir. 2000)), the court finds that a question of fact is present as to whether McBride was so motivated in light of plaintiff's denial of any wrongdoing.  Cf. Bogle v. McClure, 332 F.3d 1347, 1356 (11th Cir.   2003)(rejecting qualified immunity defense where the evidence did not undisputably indicate that the defendants were in fact motivated, at least in part, by objectively valid reasons).  Although the jury could have resolved this factual dispute in defendants' favor if they had been asked to answer an appropriate interrogatory, defendants' failure to request a special interrogatory precludes this court from revisiting

7

the issue.  See Bogle, 332 F.3d at 1358 n.8 (noting that defendants failed to request an "interrogatory directed to the pivotal issue under Foy and Stanley – whether Defendants acted, at least in part, out of lawful motives," and that the district court did not plainly err in failing to give such an instruction); Johnson v. Breeden, 280 F.3d 1308, 1318 (11th 2002)(finding that questions of "historical fact" associated with the defense of qualified immunity must be resolved by the jury, and stating that special interrogatories should be used "to apportion the jury and court functions relating to qualified immunity").

B.    Punitive Damages

Defendants also argue that the award of punitive damages against McBride should be set aside because the evidence does not show that McBride acted with malice or indifference to plaintiff's federally protected rights.  (Doc. 164-2, Def. Brf. at 6-7).

To receive an award of punitive damages, plaintiff must prove that McBride acted with malice or with reckless indifference to his federally protected right to be free from intentional race discrimination in the workplace.  See Kolstad v. American Dental Association, 527 U.S. 526, 119 S.Ct. 2118, 2125, 144 L.Ed.2d 494 (1999)("an

8

employer must at least discriminate in the face of a perceived risk that its actions will violate federal law").  Given evidence that McBride expressed an interest in an all black staff and his testimony that he was aware of laws prohibiting race discrimination, the jury had sufficient evidence to conclude that he acted, at the very least, with an understanding that his actions risked violating federal law.  The fact that McBride sought and obtained approval for his actions from defendants' employee relations specialists is not sufficient to counter the evidence of reckless indifference to plaintiff's rights.  Defendants' assertion that "[t]here is no evidence that McBride either withheld or distorted any evidence supporting the proposed disciplinary actions," (Id. at 7), is incorrect.  Plaintiff testified that, in fact, he made all appropriate corrections to his patient records and that he arranged to take patients to the doctor.  Moreover, the evidence does not demonstrate that defendants' employee relations specialists conducted anything greater than a cursory review of McBride's recommendations.

II.   JUNE 2001 TERMINATION: HOSPITAL AUTHORITY & ROBERT ROHR

   A.   Race Discrimination: Sufficiency of the Evidence

   Defendants argue that judgment as a matter of law should be granted in their favor with respect to plaintiff's *race* discrimination claim regarding his June 2001

9

termination due to a lack of evidence that the decisionmakers were motivated by plaintiff's race, as opposed to his protected activity.  (Doc. 164-2, Def. Brf. at 8; Doc. 185-1, Reply Brf. at 13-15).  The court agrees.

Although plaintiff was able to establish a weak prima facie case of race discrimination, this provides at best only a scintilla of evidence in his favor on this issue.  Furthermore, evidence of pretext does not require a finding in plaintiff's favor, especially where the record is completely devoid of any evidence of race-based discriminatory animus on the part of the relevant decisionmakers.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (finding that disbelief of an employer's proffered explanation for an adverse decision does not compel a finding of discrimination); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(finding that, although "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation," evidence of falsity does not automatically entitle the plaintiff to survive summary judgment); Chapman v. A.I. Transport, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000)(*en banc*)("The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the

10

plaintiff's proffered reason . . . is correct.'").  Plaintiff's claim of race discrimination is rebutted by the evidence of retaliation, on which he primarily relies.

      B.     <u>Retaliation: Robert Rohr</u>

Defendants argue that judgment as a matter of law should be granted in favor of Rohr with respect to plaintiff's June 2001 retaliation claim because the record contains insufficient evidence that Rohr harbored a retaliatory intent.  (Doc. 164-2, Def. Brf. at 8-10).[2]  Defendants note that Rohr had participated in many EEOC mediations and that plaintiff presented no evidence that Rohr retaliated against other employees under similar circumstances.  (<u>Id</u>. at 9).

In response, plaintiff claims that he has *direct* evidence of retaliatory intent. (Doc. 178-1, Pla. Brf. at 18).  For reasons previously stated in connection with the parties' motions for summary judgment, the court finds that direct evidence of retaliatory intent is absent in this case.  Even if, as plaintiff argues, he was terminated for *disclosure* of confidential information during the EEOC mediation (as opposed to

---

[2]Defendants do *not* argue that the evidence of retaliatory intent is insufficient with respect to the Fulton-DeKalb Hospital Authority.  They argue only that the jury erred in finding that the Hospital Authority would not have made the same decision regarding plaintiff even if his protected activity had not been considered.

*removal* of that information from the Drug Dependency Unit), the court finds that disclosure of *confidential* information during a EEOC proceeding does not constitute protected activity.  The testimony held protected in <u>Merritt v. Dillard Paper Co.</u>, 120 F.3d 1181 (11th Cir. 1997), on which plaintiff relies, concerned historical facts that were not protected by a privilege or by laws governing confidentiality of patient records.  Title VII does not prohibit termination of an employee for actions taken during an EEOC proceeding as long as the termination is not motivated by *participation* in that proceeding.

Turning to the circumstantial evidence regarding Rohr's intent, plaintiff argues (1) that Rohr was aware that the patient information had not been shown to the mediator and that plaintiff had received the information as part of his suspension notice, but that Rohr failed to disclose this information to Timothy Jefferson (the Hospital Authority's General Counsel), and (2) that Rohr admitted during trial that plaintiff's disclosure of the patient information during the mediation motivated the decision to terminate plaintiff.  As previously stated, the court finds that disclosure of confidential information during a mediation does not constitute protected activity.  Accordingly, plaintiff's reliance on Rohr's purported admission does not advance his case.

Nonetheless, although weak, the evidence does support a finding that Rohr was aware that patient information was associated with plaintiff's suspension notice and that he could have assumed that plaintiff received a copy of this information from McBride. (See Doc. 178, Attach., July 14 Trans. at 10-13). The evidence also supports a finding that Rohr knew that the patient information had not been disclosed to the EEOC mediator, but failed to inform Jefferson of this fact. Nonetheless, the court finds that this constitutes merely a scintilla of evidence in plaintiff's favor, especially in light of the undisputed fact that Rohr participated in many EEOC mediations on behalf of the Hospital Authority and the absence of any evidence of retaliation against other employees. Furthermore, both Rohr and Jefferson testified that Jefferson, rather than Rohr, was the first to suggest plaintiff's termination; Rohr merely followed Jefferson's lead. For these reasons, the court finds that judgment as a matter of law should be granted with respect to plaintiff's retaliation claim against Rohr.

Moreover, even if a jury question were present with respect to Rohr's intent, he would nonetheless be entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  This is an objective standard.

Crawford-El v. Britton, 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

Where, as here, "discriminatory intent is an element of the tort and the summary

judgment record seems to show that discriminatory intent might have played a part in

the state official's acts, the existence of the [same-decision-anyway defense]

complicates and, therefore, can cloud the question of whether the official acted lawfully

or unlawfully in the circumstances.  This cloud, in turn, raises the possibility that even

conduct which might ultimately be found to be unlawful was objectively reasonable

when it was done."  Foy v. Holston, 94 F.3d 1528, 1534 (11th Cir. 1996).

A "defendant is entitled to qualified immunity under the Foy rationale only where,

among other things, the record indisputably establishes that the defendant in fact was

motivated, *at least in part,* by lawful considerations."  Stanley v. City of Dalton, Ga.,

219 F.3d 1280, 1296 (11th Cir. 2000); see also Johnson v. City of Ft. Lauderdale, Fla.,

126 F.3d 1372, 1379 (11th Cir. 1997)(requiring an "indisputable and adequate lawful

motive"); see also Foy, 94 F.3d at 1534 (requiring "a substantial lawful motive").  The

question is not just "whether some official, acting without discriminatory intent, could

have lawfully acted as Defendants acted."  Foy at 1535 n.9.  But rather, whether, given

the presence of a substantial lawful motive, "while not ruling out some unlawful intent,"

"no jury could find that a reasonable [official in the defendant's position] would never have done the things [he] did but for a discriminatory intent." <u>Foy</u>, 94 F.3d at 1535.

Accordingly, in the context of this case, the qualified immunity defense has both a subjective and an objective component.  The subjective component requires examination of Rohr's intent.  The relevant inquiry is whether the record indisputably establishes that he was motivated at least in part by a legitimate factor – even if he was also motivated by an unlawful factor and would not have made the same decision without the unlawful factor.  If the court finds indisputable evidence of a lawful factor, then the objective component of the defense requires an inquiry into whether a reasonable officer would have known that the action taken was unlawful, especially in light of the possibility of the same-decision-anyway defense.

Turning to the subjective inquiry, the parties do not dispute that plaintiff removed patient information from Grady Hospital and that he took it with him to the mediation and revealed at least a portion of it to some of those in attendance.  Jefferson, who was the Hospital Authority's General Counsel and Chief Operating Officer, told Rohr that plaintiff's conduct was in violation of the law, and Rohr testified that he believed plaintiff's actions to be in violation of the law and Grady policy.  The evidence

15

presented by plaintiff is not sufficient to draw the sincerity of Rohr's beliefs into question.  Cf. Johnson, 126 F.3d at 1379 (finding presence of "indisputable and lawful adequate motive" even though the plaintiff denied some of the underlying misconduct and disputed the egregiousness of other misconduct); Stanley, 219 F.3d at 1296 (finding that an "undisputed and adequate lawful basis" existed for adverse employment action where the plaintiff admitted some, but not all, of the alleged wrongdoing). Furthermore, the unrebutted testimony of both Jefferson and Rohr is that Jefferson initially suggested termination and that Rohr merely concurred.  Given Jefferson's position as General Counsel, Rohr's decision to accept Jefferson's decision constitutes a separate lawful adequate motive for his subsequent endorsement of the termination recommendation made by a subordinate investigator.

Having found that Rohr was indisputably motivated, at least in part, by lawful factors, the court must now turn to the objective portion of the defense.  Rohr is entitled to qualified immunity if a reasonable official in his position (with both lawful and unlawful motives) "reasonably, albeit mistakenly, could have believed that his conduct was lawful."  Stanley, 219 F.3d at 1294.  Put another way, "[u]nless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct – despite his having adequate lawful reasons to support the act –

16

was the result of his unlawful motive, the defendant is entitled to immunity." <u>Foy</u>, 94 F.3d at 1535.  The court finds that a reasonable official in Rohr's position, although partially motivated by a retaliatory motive, could have concluded that his conduct was legal in light of the same-decision-anyway defense.  Accordingly, Rohr is entitled to qualified immunity.

    C.    <u>Same Decision Defense: Hospital Authority</u>

Defendants also argue that the evidence overwhelmingly supports a finding that the Hospital Authority (and Rohr[3]) would have made the same decision regarding plaintiff's termination even if his protected activity had not been considered.  (Doc. 164-2, Def. Brf. at 10-12).  The court does not agree.  Significantly, the list of patient names in question was revealed only to plaintiff's counsel, Rohr, and Reed (not to the

---

[3]Because the court finds in Rohr's favor on other grounds, only the Hospital Authority will be considered here.  Furthermore, a finding against the Hospital authority on this claim is not inconsistent with the court's finding in favor or Rohr on the issue of intent.  Evidence presented at trial demonstrates that others, especially Jefferson, were involved in the decision to terminate plaintiff's employment.  In addition, even if Rohr were entitled only to qualified immunity (and not a finding in his favor with respect to intent), this would not preclude a finding that his actions violated the law for purposes of holding the Hospital Authority liable.  A finding that a reasonable person in Rohr's position could have concluded that his actions were legal is not the same as a finding that his actions were in fact legal.

17

EEOC mediator) during a confidential mediation.  Furthermore, defendants' witnesses testified that revelation of patient names to defendants' own attorneys would not have been improper and that they were aware, or at least had reason to be aware, of the context in which plaintiff received the list of patient names.  Under these circumstances, plaintiff's removal of the list from the DDU is understandable (even if wrong) and therefore less culpable than it might otherwise be.  Given this, the jury could have reasonably concluded that plaintiff's actions would not have led to his termination absent a retaliatory motive.

III.   REINSTATEMENT: HOSPITAL AUTHORITY

Defendants argue that judgment as a matter of law should also be granted with respect to plaintiff's retaliatory reinstatement claim because (1) plaintiff's reinstatement to the position of Mental Health Associate was not an adverse employment action, and (2) insufficient evidence was presented at trial to support a finding that the reinstatement decision was retaliatory.  (Doc. 164-2, Def. Brf. at 13-16; Doc. 185-1, Reply Brf. at 24-26).

During the trial of this case, the parties stipulated to the following facts:

18

On October 24, 2001, the Hospital Authority's attorney wrote the EEOC investigator and informed him of an offer to reinstate Mr. Brooks to an unspecified position at Grady Hospital.

On November 8, 2001, the Hospital Authority's outside attorney wrote to Mr. Brooks' attorney and offered to reinstatement Mr. Brooks to a job in the Emergency Room, Crisis Stabilization Unit, or other area in the Department of Mental Health Services where he was qualified to work.

On November 8, 2001, Mr. Brooks' attorney wrote to the Hospital Authority's outside attorney and asked whether the offer of reinstatement was unconditional, that is, whether Brooks had to give up his claims in order to receive the job.

On November 12, 2001, the Hospital Authority's outside attorney wrote Mr. Brooks' attorney and stated that the reinstatement was unconditional, that the position title was Mental Health Associate, and that a job description was enclosed.  The Hospital Authority's outside attorney stated that if Mr. Books had any questions about the assignment, he should contact Mr. Reed, the head of the department.

On November 14, 2001, Mr. Brooks' attorney wrote to the Hospital Authority's outside attorney and advised that Mr. Books would return to work on December 3, 2001.

(Doc. 154).

Although this court previously ruled that plaintiff's reinstatement to the position of Mental Health Associate could be construed as an adverse employment action, in light of the evidence presented at trial and upon further reflection, the court now finds

19

that this is not the case.  As defendants argue, plaintiff's reinstatement was the product of an unsolicited and unconditional offer of reinstatement from the Hospital Authority. For this reason, plaintiff cannot be treated as an *applicant* for a position at Grady.[4] Under these circumstances, the offer cannot be construed as adverse to plaintiff.  This is especially so in light of the fact that plaintiff failed to indicate, during the reinstatement negotiations, that he would like to be placed in a Substance Abuse Counselor position when, or if, available.

Moreover, even if plaintiff's placement in the position of Mental Health Associate could be construed as an adverse employment action, the record contains, at best, only a scintilla of evidence of a retaliatory motive.  Both Reed and Upshaw testified that, at the time they were asked about positions in the DDU, none were available, and they were unaware of any that would soon be available.  Furthermore, they were not involved in the negotiation process and were not instructed to inform their superiors if a position became available.

---

[4]The retaliation provision of Title VII states: "It shall be an unlawful employment practice for an employer to discriminate against any of his *employees or applicants for employment* . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has [participated in EEOC proceedings]." 42 U.S.C. § 2000e-3(a)(emphasis added).

20

Plaintiff attempted to rebut this of evidence with Barbara Payne's testimony that, at an unspecified time, she overheard Upshaw say that she did not want to reinstate that "goofy white boy" to a position in the DDU and that she intended to quickly fill vacant positions in order to avoid doing so.  Nonetheless, in light of the absence of evidence that any positions were available at the relevant time, this evidence is insufficient to sustain the jury's verdict.

IV.    <u>EXECUTION OF JUDGMENT IS STAYED</u>

Finally, defendants' request for a stay of execution of the judgment pending a ruling on this motion is **GRANTED nunc pro tunc**.

V.    <u>CONCLUSION</u>

For the reasons stated, defendants' Motion for Judgment as a Matter of Law, for a New Trial, and to Stay Execution of Judgment [Doc. 164] is **GRANTED in part and DENIED in part**.  The following claims are hereby **DISMISSED**: (1) plaintiff's race discrimination claim against the Fulton-DeKalb Hospital Authority and Robert Rohr associated with his June 2001 termination, (2) plaintiff's retaliation claim against Robert Rohr (but not the Hospital Authority) associated with his June 2001 termination,

21

and (3) plaintiff's retaliation claim against the Hospital Authority associated with his December 2001 reinstatement to the position of Mental Health Associate.  Given these findings, the damages awarded by the jury must be adjusted to eliminate the compensatory damages associated with plaintiff's reinstatement and the punitive damages against Robert Rohr.  The adjusted damages are as follows:

> (1)   $5,000 in compensatory damages and $30,000 in punitive damages against defendant Harry McBride;

> (2)   $50,000 in compensatory damages and $26,041 in back pay against the Fulton-DeKalb Hospital Authority for plaintiff's June 2001 termination; and

> (3)   liquidated damages under the Fair Labor Standards Act against the Fulton-DeKalb Hospital Authority.

IT IS SO ORDERED, this 22nd day of November, 2005.


_____/s/ Gerrilyn G. Brill_____
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

T:\FINAL.ORD\Brooks1NewTrial.wpd

AO 72A
(Rev.8/82)